UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTOPHER LAMONT SHERMAN, | : | CIVIL ACTION NO. |
| Petitioner, | : | 3:11-CV-1122 (JCH) |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | FEBRUARY 21, 2012 |
| Respondent. | : | |

**RULING RE: MOTION TO VACATE, SET ASIDE,
OR CORRECT SENTENCE (DOC. NO. 1)**

**I.    INTRODUCTION**

Petitioner Christopher Lamont Sherman moves this court to vacate his sentence under 28 U.S.C. § 2255.  Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 1) ("Petition").  Sherman argues, first, that the court erred in its calculation of the quantity of crack cocaine attributable to him for sentencing purposes.  He next argues that his trial counsel was ineffective in failing to (1) challenge the "weekly drug quantity" attributed to Sherman by the Court, (2) file a timely motion to suppress wiretap evidence used against him, and (3) seek a downward departure from the guideline range at sentencing.  Finally, Sherman argues that his appellate counsel was ineffective in failing to (1) challenge the weekly drug quantity, (2) raise the issue of ineffective assistance of trial counsel, and (3) raise the issue of Sherman's "late-comer status" in the conspiracy. For the following reasons, the Motion to Vacate is denied.

**II.    BACKGROUND**

On January 16, 2008, a jury returned a guilty verdict against Sherman on one count of conspiracy to possess with the intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of cocaine base, in violation of

1

21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A).  Jury Verdict (Doc. No. 748), <u>United States v. Sherman</u>, No. 3:08-cr-4 (JCH), at 2.

At sentencing on June 30, 2009, Sherman objected to the 18 kilograms of crack cocaine that the United States Probation Office had attributed to him in the Presentence Report ("PSR").  <u>See</u> Sentencing Transcript (Doc. No. 1107), <u>United States v. Sherman</u>, No. 3:08-cr-4 (JCH), at 17 ("Sentencing Tr.").  In response to the objection, the court undertook its own calculation.  After hearing arguments from counsel, the court decided to hold Sherman accountable for drugs obtained by co-defendant Roshaun Hoggard but not those obtained by co-defendant Mauriel Glover.  <u>Id.</u> at 40-41.  The court further found that Sherman had entered into a conspiracy with Hoggard in late August; that this conspiracy had continued for approximately thirteen weeks, ending with Sherman's arrest on November 27; and that, during the thirteen-week period, Hoggard had obtained approximately 250 grams of crack cocaine per week.  <u>Id.</u> at 44-45.  Multiplying 250 grams by 13 weeks, the court concluded that 3.25 kilograms of crack cocaine were properly attributable to Sherman.  <u>Id.</u> at 45.

Additionally, the court granted the defendant's request for a downward departure from the sentencing guideline range, in light of the disparity between the guideline sentences for crack and powder cocaine offenses.  <u>Id.</u> at 48, 53.  The court noted that the guideline range applicable to an offense involving 3.25 kilograms of powder cocaine would be 110 to 137 months and that Sherman was subject to a mandatory minimum penalty of 120 months.  <u>Id.</u>  Based on this and other factors, the court imposed a sentence of 132 months' imprisonment.  <u>Id.</u> at 82.

Sherman appealed, arguing that (1) the trial evidence was insufficient to support a conviction; (2) the court erred in believing itself bound by the statutory mandatory minimum of 120 months' imprisonment; (3) the court erred in calculating the quantity of crack attributable to him; and (4) the court erred in denying a motion to suppress wiretap evidence that was admitted against Sherman at trial. On September 13, 2010, the Second Circuit rejected Sherman's claims and affirmed the court's judgment. See United States v. Rawls, 393 Fed. Appx. 743 (2d Cir. 2010).

On July 15, 2011, Rodriguez filed the instant Petition. On July 22, 2011, the court ordered the government to show cause why the Petition should not be granted. Order (Doc. No. 2). The government submitted its opposition on October 12, 2011. Resp't's Opp. (Doc. No. 6).

### III. DISCUSSION

To obtain relief under section 2255, the petitioner must demonstrate that his "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. Such relief is an extraordinary remedy, and generally should only be granted where there exists "constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." See Napoli v. United States, 32 F.3d 31, 35 (2d Cir. 1994) (internal quotations and citations omitted). Even constitutional error, however, will not be corrected unless it had a "substantial and injurious effect." See Underwood v. United States, 166 F.3d 84, 87 (2d Cir. 1999).

Where a petitioner procedurally defaulted his claims by failing to raise them at trial and on direct appeal, a court will only review the claims if the petitioner

3

demonstrates cause for the default of the claim, and prejudice that resulted from the alleged violation.  See Reed v. Farley, 512 U.S. 339, 354 (1994) ("Where the petitioner . . . failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged . . . violation.'" (quoting Wainwright v. Sykes, 433 U.S. 72, 84 (1977))).  A petitioner may overcome a procedural default, however, by demonstrating that his counsel's performance was constitutionally ineffective.  See Murray v. Carrier, 477 U.S. 478, 488 (1986).

### A. Quantity Arguments

The court first addresses Coleman's claim it erred in calculating the quantity of cocaine base attributable to him for sentencing purposes.  Sherman actually raises two arguments on this issue.  First, he contends that the court erred by holding him accountable for crack cocaine that was distributed before he joined the conspiracy.  Petition at 7.  Second, he claims that the court erred in its calculation of the "weekly drug quantity" involved in the conspiracy.  Id. at 16.

A defendant may not use a section 2255 motion to re-litigate issues already decided on direct appeal.  See Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010).  "The mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate."  Id.  In deciding whether an issue was resolved by the appellate court, "a district court should look to both the specific dictates of the remand order as well as the broader spirit of the mandate."  Id. (internal quotation marks and citations omitted).

With regard to the duration of Sherman's involvement in the conspiracy, the court notes that Sherman already raised this issue in his direct appeal. See Rawls, 393 Fed. Appx. at 747 ("Sherman contends the district court erred in estimating that he had been involved in the conspiracy for at least three months . . . ."). The Second Circuit "detect[ed] no error in the court's approximation" that Sherman joined the conspiracy approximately three months prior to his arrest and affirmed the finding. Id. at 748. Accordingly, the mandate rule bars Sherman from re-litigating this issue.

The court finds that the original weekly quantity finding is similarly immune to collateral attack. Even though Sherman did not specifically challenge the weekly quantity finding on direct appeal, the Second Circuit noted that the court's "ultimate quantity calculation was quite conservative given the evidence adduced at trial respecting the magnitude of the drugs involved." Rawls, 393 Fed. Appx. at 747-48. The court finds that this broad appellate affirmation of the total quantity calculation precludes Sherman from re-litigating any individual components of that calculation, such as the weekly quantity finding.[1]

### B. Ineffective Assistance of Counsel

The court next considers Sherman's claims that he received ineffective assistance of counsel both at trial and on appeal. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his counsel's performance "fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

---

[1] Even if the mandate rule did not bar Sherman's claim regarding the weekly quantity finding, the Second Circuit's characterization of the overall quantity assessment as "conservative" precludes a finding that Sherman was subject to a "complete miscarriage of justice." See Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (holding that, "absent a complete miscarriage of justice," a procedurally defaulted claim regarding the application of the Sentencing Guidelines may not be raised in a section 2255 motion).

would have been different." See Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).  In examining such a claim, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." See id. at 689.  If the defendant fails to satisfy either prong, the court does not need to consider the other.  See id. at 697.

To establish ineffective assistance of appellate counsel, a petitioner must meet the same standard.  See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).  A petitioner may not prevail in such a claim simply by showing that appellate counsel omitted a nonfrivolous argument, as counsel is not obligated to raise every possible nonfrivolous argument.  See id.  A petitioner may prevail, however, where he can demonstrate that counsel omitted a significant and obvious issue, while pursuing issues on appeal that were "clearly and significantly weaker." See id.  In assessing an attorney's performance, a reviewing court must judge counsel's conduct "on the basis of the facts of the particular case viewed as of the time of counsel's conduct, and may not use hindsight to second-guess his strategy choices." See id. (internal quotations and citations omitted).  The court's prejudice inquiry, however, "may be made with the benefit of hindsight." See id. at 534.

    1. Trial Counsel

Sherman argues that his trial counsel was ineffective in failing to (1) challenge the drug quantity attributed to Sherman by the Court, (2) file a timely motion to suppress wiretap evidence used against Sherman, or (3) seek a downward departure from the guideline range at sentencing.  Petition at 10.  The court addresses each of these arguments in turn.

First, as discussed above, Sherman's counsel did object to the PSR's finding that Sherman was responsible for 18 kilograms of crack cocaine. In response to this objection, the court revised that number to 3.25 kilograms. In light of the significant quantity reduction that defense counsel had already obtained for his client, the court cannot find that his decision not to object the court's revised quantity assessment was objectively unreasonable. Furthermore, in light of the court's pronouncement that its revised quantity assessment "was an extremely conservative conclusion," Sentencing Tr. at 45, there is no reason to believe that an objection by Sherman's counsel would have led to a further reduction in the court's quantity assessment.

Sherman's claim that his counsel was ineffective in failing to "timely file a motion to suppress the wiretap [of co-defendant Hoggard's phone]" is similarly unavailing. Petition at 12. As the government notes, Sherman's counsel did file a motion to suppress the wiretap evidence against him, which the court subsequently denied. See Motion to Suppress Telephone Intercepts (Doc. No. 730), United States v. Sherman, No. 3:08-cr-4 (JCH) ("Mot. to Suppress"). On appeal, the Second Circuit reviewed the decision de novo and affirmed the denial "for substantially the same reasons set forth by the district court." Rawls, 393 Fed. Appx. at 748. Sherman argues that the "motion should have been filed way before, and proper research should have conducted on the matter," Petition at 12, but nothing in the record suggests that an earlier-filed or more thoroughly researched motion would have achieved a different result.

Finally, the court finds no support for Sherman's assertion that his counsel failed to seek a downward departure at sentencing. As noted earlier, Sherman's counsel did move—successfully—for a significant downward departure based on the guideline

7

disparity between crack and powder cocaine offenses. It is unclear what additional departure, if any, Sherman believes his counsel should have requested. As a result, the court sees no reason to find trial counsel's assistance ineffective with regard to the issue of a downward departure.

        2.    Appellate Counsel

Sherman argues that his appellate counsel was ineffective in failing to (1) challenge the weekly drug quantity attributed to him by the court, (2) raise the issue of ineffective assistance of trial counsel, and (3) raise the issue of Sherman's "late-comer status" in the conspiracy. Petition at 13. Again, the court addresses each of these arguments in turn.

First, while it is true that Sherman's appellate counsel did not specifically challenge the weekly quantity finding on appeal, in light of the Second Circuit's already discussed pronouncement that the overall quantity calculation was "quite conservative given the evidence," Rawls, 393 Fed. Appx. at 748, the court does not find it reasonably probable that such a challenge would have been successful.

Second, the court rejects Sherman's argument that appellate counsel was ineffective for failing to raise the issue of trial counsel's effectiveness. As discussed above, Sherman's claims regarding the ineffective assistance of his trial counsel are meritless. Accordingly, the court cannot find that appellate counsel behaved unreasonably by declining to raise such claims on direct appeal.

Finally, the court rejects Sherman's argument that his appellate counsel was ineffective in failing to raise his "late-comer status," because appellate counsel did raise this issue. As already discussed, the Second Circuit affirmed the finding that

"Sherman's involvement in the conspiracy . . . began approximately three months prior to his arrest."  Rawls, 393 Fed. Appx. at 748.

## IV. CONCLUSION

For the foregoing reasons, Sherman's Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 1) is **denied**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 21st day of February, 2012.

       /s/ Janet C. Hall
Janet C. Hall
United States District Judge